FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 26, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTIN F., | No. 1:17-cv-00331-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 18, 22 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 18, 22. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 18, and grants Defendant's Motion, ECF No. 22.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [she] is not only unable to do [her]

previous work[,] but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in

the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(b); 416.920(b).

   If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c);

416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

§§ 404.1520(c); 416.920(c).

   At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits on February 7, 2014 and supplemental security income benefits on June 3, 2014, alleging disability beginning December 14, 2013. Tr. 243-50. Benefits were denied initially,[1] Tr.

_____

[1] On September 17, 2014, Diane Fligstein, Ph.D. prepared a mental RFC for Disability Determination Services finding Plaintiff markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 128-29; Tr. 145-46. This resulted in a proposed finding of disability. Tr. 133, 150. Subsequently, the San Francisco

181-87, and upon reconsideration.  Tr. 190-94.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on September 1, 2016.  Tr. 41-87.  On September 28, 2016, the ALJ denied Plaintiff's applications.  Tr. 18-40.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 14, 2013, the alleged onset date.  Tr. 23.  At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder; generalized anxiety disorder; polyarthralgias; and obesity.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 24.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> [S]he cannot climb ladders, ropes, and scaffolds, and can frequently perform all other postural activities; she can have only occasional exposure to vibration and pulmonary irritants; she can have no exposure to hazards, such as unprotected heights and moving mechanical parts; she can tolerate only moderate noise levels; she is limited to simple, routine, and repetitive tasks with a reasoning level of two or less; she needs a routine, predictable work environment that requires no more than simple decision-making; and she can have only occasional contact with the public, coworkers, and supervisors.

_____

Disability Quality Branch issued a Request for Corrective Action finding the initial mental RFC flawed and directing issuance of a new disability determination explanation denying benefits.  Tr. 263-65.

Tr. 26.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a childcare provider.  Tr. 32.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as photocopy machine operator, marker, and cardboard inserter.  Tr. 33.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from December 14, 2013 through the date of the decision.  Tr. 34.

On July 27, 2017, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 18.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly considered the lay witness statements; and

4.  Whether the ALJ properly found at step five that Plaintiff could perform other work in the national economy.

*See* ECF No. 18 at 9-18.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for discrediting Plaintiff's symptom testimony. ECF No. 18 at 15-18.

An ALJ engages in a two-step analysis when evaluating a claimant's subjective symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a); Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c) (1)–(3), 416.929 (c) (1)–(3). The ALJ is instructed to "consider all

of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." *Id*. at *2.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. Tr. 27.

### 1. Credited Symptom Claims

Not all of Plaintiff's symptom claims were rejected by the ALJ. The ALJ observed that he credited certain functional limitations which were accommodated in the RFC. Tr. 28. Specifically, although Plaintiff alleged she was unable to sustain attendance in a work environment, the ALJ noted this allegation was based on her inability to complete cosmetology school and anxiety. Tr. 27. As Plaintiff identified intensive social interaction and academic testing as primary reasons she was unable to sustain attendance, the ALJ incorporated limitations in social functioning and concentration into the RFC. Tr. 26. The ALJ commented that cosmetology school was "a far more demanding undertaking" than the simple, routine work consistent with the RFC would entail. Tr. 27.

Plaintiff contends the ALJ's comment is "speculation not supported by the evidence" and the pressures of "performing and failing" would be the same in both contexts. ECF No. 18 at 17. The ALJ may make reasonable inferences drawn

from the record.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th

Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record.").  Plaintiff's testimony and complaints to

medical providers did not indicate the "pressure of performing" contributed to

absences from school.  *See* Tr. 65 ("I just got a lot of anxiety being around all the

people all the time. . . . It was more the learning.  I didn't do well at first. . . . So, I

just never really felt like I could do it. . . . When a test would come up . . . I'd have

anxiety.  I wouldn't even be able to handle going."); Tr. 490 ("I was so horribly

depressed and I can't go in without crying.  I can't tolerate drama and there was a

lot of drama."); Tr. 493 (she felt unable "to tolerate the interpersonal and cognitive

demands of the classes."); Tr. 585 ("She develops severe fatigue after cutting the

hair of 3-4 clients and is not able to put in a full day's work because of above

symptoms.").  The record supports the ALJ's reasonable interpretation of

Plaintiff's credited testimony regarding symptoms contributing to her absenteeism

in cosmetology school.

      *2. Improvement with Treatment*

      The ALJ discounted Plaintiff's other symptoms claim finding Plaintiff's

symptoms improved with treatment, which the ALJ concluded called into question

the reliability of Plaintiff's alleged disabling limitations.  Tr. 27.  The effectiveness

of medication and treatment is a relevant factor in determining the severity of a

claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted that that during a routine appointment in March 2015, it was reported "[m]edications definitely improve her mental functioning and also help reduce depression."  Tr. 28 (quoting Tr. 545).  Subsequently, in a January 2016 treatment note, it indicated Plaintiff's depression was "well controlled with medication" despite some symptoms of fatigue.  Tr. 28 (quoting Tr. 556).  Plaintiff contends the "symptom-free" periods relied upon the ALJ do not reflect the record showing a pattern that "her depression always returned."  ECF No. 18 at 10 (citing Tr. 545, 556, 560-61, 566).  However, a review of the record reflects that when Plaintiff's symptoms of depression or anxiety returned or worsened, Plaintiff asked for and responded well to prescription adjustments.  *See* Tr. 440 (June 2013: adding Effexor after Plaintiff asks for something other than Wellbutrin); Tr.459 (Jan. 2014: increasing Effexor dosage from 75 to 150 mg after Plaintiff asks provider whether to take something different or add another medication); Tr. 561

(June 2016: increasing Effexor dosage to 225 mg).  Even if Plaintiff can identify

evidence that can be interpreted more favorably to Plaintiff's position, the evidence

is susceptible to more than one rational interpretation, and therefore the ALJ's

ultimate conclusion must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005).  Substantial evidence supports the ALJ's reasonable interpretation

of the evidence.  That Plaintiff's mental health symptoms improved with treatment

was a clear and convincing reason to discount Plaintiff's symptom testimony.

### 3. Minimal and Conservative Treatment

The ALJ found Plaintiff's statements regarding her symptoms were

inconsistent with the minimal mental health treatment in the record.  Tr. 28.  The

medical treatment a Plaintiff seeks to relieve her symptoms is a relevant factor in

evaluating the intensity and persistence of symptoms.  20 C.F.R. §§

416.929(c)(3)(iv), (v).  When a claimant receives only conservative or minimal

treatment, it supports an adverse inference as to the claimant's credibility regarding

the severity of her subjective symptoms.  *Parra v. Astrue*, 481 F.3d 742, 750-51

(9th Cir. 2007); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  Moreover,

noncompliance with medical care or unexplained or inadequately explained

reasons for failing to seek medical treatment cast doubt on a claimant's subjective

complaints.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93

F.3d 540, 544 (9th Cir. 1996).  Where the evidence suggests lack of mental health

treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Though Plaintiff received mental health treatment in the form of medication, the ALJ observed the record contained very few counseling records. Tr. 28. Plaintiff had reported experiencing benefit from counseling in the past. Tr. 28; *see* Tr. 493 (Plaintiff "has felt that long term counseling has largely kept her 'on track.'"). In 2014, Plaintiff asked her medical provider about counseling and she was provided the name of a counselor. Tr. 463. However, the record contains only a single counseling record pertaining to treatment during the relevant period. Tr. 586-88 (Plaintiff's March 23, 2015 visit with therapist Diane Thompson); *see* Tr. 589 (letter from Lisa Burnell pertaining to mental health treatment in 2010 and 2011). Though Plaintiff apparently attended several other sessions with Ms. Thompson, more extensive records were not available from Ms. Thompson, in part, due to Plaintiff having missed or cancelled nine appointments within a one-

month timeframe.  Tr. 367.  The ALJ noted that the majority of treatment records did not involve mental health complaints.  Tr. 28.

Plaintiff does not challenge the ALJ's finding that Plaintiff did not obtain extensive mental health treatment, but claims this is a direct symptom of her mental health impairments.  ECF No. 18 at 17.  The ALJ inquired into the reason for lack of treatment and Plaintiff attributed her failure to seek treatment to anxiety.  Tr. 75.  The fact that she did not continue to seek mental health treatment, despite the recommendations of her providers and her ability to do so, supports the ALJ's conclusions regarding Plaintiff's assertion of disabling symptoms of depression and anxiety.  Alternatively, even if the failure to pursue mental health treatment was related to the Plaintiff's depression and anxiety and this alone would be insufficient to sustain the ALJ's adverse finding, any error is harmless because it does not invalidate the overall analysis of Plaintiff's symptoms.  *See, e.g.*, *Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

### 4. Lack of Supporting Medical Evidence

The ALJ found the limitations reported by Plaintiff were not consistent with disabling functional limitations or supported by the medical evidence.  Tr. 28.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical

evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

In regards to Plaintiff's mental health complaints, the ALJ noted that Plaintiff's "candid presentation to treating sources" demonstrated "very few instances of mental health complaints, aside from occasional anxiety." Tr. 28. The record supports the ALJ's conclusion. Plaintiff routinely sought medical care during the relevant period, but only occasionally noted mental health complaints. When Plaintiff sought treatment, the ALJ observed that her records often reflected frequent normal findings. Tr. 28. For example, Dr. Brown's treatment record often reported Plaintiff "alert with normal mood and affect." Tr. 28 (citing Tr. 544, 547, 552, 568). The ALJ also noted that the two counseling records were not consistent with disabling functional limitations. Tr. 28 (citing Tr. 586-89). Likewise, the ALJ concluded the objective findings showing full range of motion and normal gait, belied the severity of Plaintiff's alleged physical limitations, Tr.

28, a finding Plaintiff does not contest.[2]  There is substantial evidence to support the ALJ's conclusion that there were minimal complaints and minimal treatment records supporting Plaintiff's allegation of disabling symptoms.

In summary, the ALJ provided a number of specific, clear, and convincing reasons for not fully crediting Plaintiff's symptom claims.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of

_____

[2]  Defendant's Motion responds only to the issues raised regarding Plaintiff's psychological complaints because Plaintiff does not specifically challenge the physical RFC.  ECF No. 22 at 3.  The Court notes that Plaintiff generally contends that had the ALJ credited Plaintiff's symptom claims, the ALJ should have found Plaintiff "more limited from physical and psychological perspective, and unable to work."  ECF No. 18 at 18.  Given Plaintiff's failure to specifically and distinctly argue error related to the evaluation of Plaintiff's physical RFC, any challenge to that issue is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

examining doctors Frank Rosekrans, Ph.D., Elizabeth Koenig, M.D., and John Arnold, Ph.D., as well as treating physician, William R. Brown, M.D.  ECF No. 18 at 5-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

To the extent that Drs. Rosekrans, Koenig, Arnold, and Brown assessed Plaintiff with limitations that would prevent her from working, these opinions are contradicted by the credited opinions of the state agency reviewing physicians, Bruce Eather, Ph.D., Tr. 90-117, Christmas Covell, Ph.D., Tr. 161-63, 175-77, Howard Platter, Tr. 160-61, 174-75, and testifying medical expert Glenn Griffin, Ph.D, Tr. 55-64. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting their opinions. *Bayliss*, 427 F.3d at 1216.

### 1. Frank Rosekrans, Ph.D. (Nov. 2013)

Dr. Rosekrans evaluated Plaintiff on November 5, 2013 and diagnosed major depressive disorder (single episode moderate), somatization disorder, and a GAF score of 45. Tr. 412-20. He opined Plaintiff had marked limitations in the abilities to: (i) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (ii) communicate and perform effectively in a work setting; (iii) complete a normal work day and work week without interruptions from psychologically based

symptoms, and (iv) maintain appropriate behavior in a work setting.  The ALJ assigned little weight to Dr. Rosekrans' opinion.

First, the ALJ found Dr. Rosekrans did not review any outside treatment records and formed his opinions based upon Plaintiff's self-reported symptoms. Tr. 28.  The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Here, the ALJ credited the opinions of state reviewing psychologists, Dr. Eather and Dr. Covell, and the medical expert, Dr. Griffin, all of whom had reviewed the medical evidence available to them.  *See* Tr. 90-117 (Oct. 2014 disability determination explanations listing evidence reviewed by Dr. Eather); Tr. 153-80 (Dec. 2014 disability determination explanations listing evidence reviewed by Dr. Covell); Tr. 55 (testimony indicating Dr. Griffin reviewed Exhibits 1F through 16F); Tr. 30 (ALJ finding Drs. Eather and Covell's opinions consistent with the longitudinal record); Tr. 31 (ALJ finding Dr. Griffin's opinion consistent with his review of the medical evidence).  It was reasonable for the ALJ to consider the medical source's familiarity with and reliance on the medical record in evaluation his opinions.  Plaintiff does not challenge this reason, thus it is waived.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address an issue not raised with specificity in Plaintiff's briefing).

Moreover, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. Here, Dr. Rosekrans conducted a clinical interview that was based entirely on Plaintiff's self-reports. Though Dr. Rosekrans also performed a mental status examination, he relied upon Plaintiff's responses. Plaintiff does not challenge this reason, thus it is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address an issue not raised with specificity in Plaintiff's briefing). As Dr. Rosekrans' opinion appears largely based on the symptoms Plaintiff reported, which the ALJ properly discounted, this was a specific and legitimate reason to accord Dr. Rosekrans' opinion less weight.

Next, the ALJ found Dr. Rosekrans' opinion was not supported by his own examination findings. Tr. 29. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ found Dr. Rosekrans'

opinion inconsistent with Plaintiff's "unremarkable presentation and mental status." Tr. 29. Dr. Rosekrans observed Plaintiff was nicely dressed and groomed; Plaintiff's speech was normal, not overly rapid or slow; Plaintiff "did not appear anxious defensive, angry or sullen"; Plaintiff maintained appropriate eye contact and cooperated during the evaluation; Plaintiff had "no signs of profound depression"; Plaintiff was able to go to public spaces without excessive anxiety; Plaintiff's emotions did not seem "labile or excitable, nor did they seem flat or overly subdued"; and finally, Plaintiff's thought process, concentration, insight, and judgment were all within normal limits. Tr. 415-16. Plaintiff's contention that Dr. Rosekrans' opinion was "not inconsistent with Ms. Franco's presentation," does not address the internal inconsistencies cited by the ALJ. ECF No. 18 at 11. The inconsistency between Dr. Rosekrans' observations and the limitations he assessed constitutes a specific and legitimate reason for rejecting his opinion. *Bayliss*, 427 F.3d at 1216.

Finally, the ALJ found Dr. Rosekrans' opinion was inconsistent "with the remainder of the record." Tr. 29. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). The ALJ noted inconsistencies with

Plaintiff's routine treatment records from Plaintiff's primary care physician, Dr. Brown. Tr. 29. Dr. Griffin opined that all three one-time evaluations in the record (of Drs. Rosekrans, Koenig, and Arnold) were inconsistent with Dr. Brown's treatment record which contained very little about Plaintiff's psychiatric complaints. Tr. 59-60. The ALJ also noted inconsistency with the credited portion of Dr. Koenig's opinion indicating Plaintiff was capable of perform simple tasks. Tr. 29. Dr. Rosekrans' opinion was also contradicted by the mild to moderate limitations assessed by three non-examining doctors' opinions, including medical expert Dr. Griffin, who reviewed the longitudinal record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (explaining that non-examining source's report may serve as substantial evidence and may be used to reject an examining physician's opinion, if it is consistent with and supported by other evidence in the record).

Plaintiff contends that Dr. Rosekrans' opinion was consistent other part of the record, ECF No. 18 at 11, however, this does not warrant a reversal or remand of the ALJ's decision because it amounts to no more than a dispute about the ALJ's interpretation of the evidence. It is well established that the ALJ is responsible for resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Moreover, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20

C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

The ALJ identified specific and legitimate reasons supported by substantial evidence for according little weight to Dr. Rosekrans' opinion.

### 2. Elizabeth Koenig, M.D. (Aug. 2014)

Dr. Koenig performed a psychiatric interview and consultative examination at the request of the Department of Disability Determination Services on August 31, 2014. Tr. 487-94. The only record she had available for review was the evaluation of Dr. Rosekrans. Tr. 486-87. Though she noted the existence of "diagnostic ambiguities," Tr. 494, Dr. Koenig diagnosed: major depressive disorder, recurrent (rule out bipolar II disorder, currently depressed, moderate-to-severe without psychotic symptoms); attention deficit hyperactivity disorder, combined type, provisional; anxiety disorder, NOS, with panic and generalized anxiety, perhaps some PTSD symptoms; rule out of alcohol abuse in sustained full remission; and rule out personality disorder, not otherwise specified, with cluster B traits (particularly borderline) and perhaps schizotypal traits. Tr. 493. Dr. Koenig assessed a GAF score of 62. Dr. Koenig opined Plaintiff could perform simple tasks well, but would have difficult with tasks requiring more sustained

concentration (including math) or multiple step commands. Tr. 494. Dr. Koenig

further opined that without stabilization of her mood and anxiety, she is "likely to

have difficulty with regular attendance at work as she has been having with her

classes." Tr. 494. She also opined Plaintiff's lability and rapid speech "may"

interfere with effective communication. *Id*.

The ALJ accorded significant weight to the portion of Dr. Koenig's opinion

suggesting Plaintiff could perform simple tasks and the GAF score assessment. Tr.

29. The ALJ accorded little weight to the remainder of her opinion citing three

reasons. *Id*.

First, the ALJ found Dr. Koenig's opinion inconsistent with the treatment

record of Plaintiff's primary treating physician, Dr. Brown. Tr. 29. An ALJ may

reject a physician's findings that are unsupported by the record as a whole or by

objective medical findings. *Batson*, 359 F.3d at 1195. The ALJ noted Plaintiff's

"candid presentation with Dr. Brown "showed no significant mental symptoms or

communications deficits." Tr. 29. The ALJ referred to Dr. Brown's nearly

contemporaneous treatment record from August 11, 2014, just twenty days prior to

the evaluation with Dr. Koenig on August 31, 2014. At Plaintiff's August 11

appointment with Dr. Brown, Plaintiff presented with primary complaints of left

otalgia and "associated fatigue," left hip pain, and headaches. Tr. 541, 543

(endorsing depression and anxiety in Dr. Brown's review of systems). The ALJ

found it notable that just days later, Dr. Koenig opined that Plaintiff's "degree of depression and distress with which she presents," would likely result in Plaintiff having attendance difficulties at work as she has had with her cosmetology classes. Tr. 494. In yet another example, Dr. Brown noted Plaintiff was "communicative" with a normal affect, Tr. 544, meanwhile Dr. Koenig opined rapid speech might interfere with effective communication, Tr. 494. These inconsistencies with the contemporaneous treatment record provided a specific and legitimate reason to accord less weight to Dr. Koenig's opinion that Plaintiff would likely have attendance and communication difficulties.

Second, the ALJ found Dr. Koenig's opinion was internally inconsistent with the assessed GAF score of 62, which the ALJ found was "indicative of an individual with some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well." Tr. 29. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. As noted by the Ninth Circuit, "a GAF score is merely a rough estimate of an individual psychological, social, or occupational functioning used to reflect an individual's need for treatment, [ ] it does not have any direct correlate of work-related or functional limitations." *Hughes v. Coleman*,

599 Fed. Appx. 765, 766 (9th Cir. April 15, 2015) (unpublished opinion) (citation omitted). Plaintiff does not address this reason, ECF No. 18 at 12-13, thus it is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address an issue not raised with specificity in Plaintiff's briefing). Even if the Court were to consider the issue, because the ALJ offered other specific and legitimate reasons to discount Dr. Koenig's opinion, any potential error in consideration of the GAF score is inconsequential to this overall disability determination and is therefore harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Finally, the ALJ rejected Dr. Koenig's opinion that Plaintiff's struggle with attendance in cosmetology school was an indicator Plaintiff would likely struggle with attendance at work. Tr. 29. The ALJ's findings are upheld if they are supported by inferences reasonably drawn from the record. *See Molina*, 674 F.3d at 1111. Plaintiff was self-employed as a fulltime child care provider for many years leading up to her alleged date of onset. Tr. 271. Plaintiff then nearly completed cosmetology school, despite the demands and attendance problems. Dr. Griffin testified that the ability to maintain regular attendance at work would depend on the "nature and demand of the work," and that Dr. Koenig's concern about attendance was not made in reference to "any specific set of work demands or work conditions." Tr. 63. As discussed *supra*, based on this record, it was

reasonable for the ALJ to conclude the demands of cosmetology school were greater than the simple work contemplated by the RFC, and to reject the contention Plaintiff's absenteeism at school correlates to her ability to complete a typical work day or work week. Accordingly, the ALJ was entitled and did here reasonably reject Dr. Koenig's opinion regarding absenteeism by providing specific and legitimate reasons in support of his conclusion.

### 3. John Arnold, Ph.D. (Sept. 2015)

On September 28, 2015, Dr. Arnold completed a psychological evaluation diagnosing Plaintiff with persistent depressive disorder, late onset; generalized anxiety disorder; rule out somatic symptom disorder; attention deficit disorder; and borderline and dependent personality features, rule out disorder. Tr. 536-40. Dr. Arnold assessed marked limitations in the abilities to: (i) adapt to changes in a routine work setting; (ii) be aware of normal hazards and take appropriate precautions; and (iii) complete a normal work day and work week without interruptions from psychologically based symptoms. Dr. Arnold recommended stable housing, medical care and psychiatric services/counseling. Tr. 539. The ALJ accorded little weight to Dr. Arnold's assessment. Tr. 30.

First, the ALJ rejected Dr. Arnold's opinion because it was "cursory" and provided in a check-box form. Tr. 30. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228;

*Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

As the ALJ noted, Dr. Arnold's testing showed "mild impairment" on Trails A, but memory, insight, and judgment within normal limits; thus, Dr. Arnold's testing did not support the ALJ's conclusion Plaintiff would have difficulty adapting to change or being aware of hazards. As a one-time examining provider, Dr. Arnold did not have an ongoing relationship with Plaintiff in order to lend support to these opinions. Accordingly, without other explanation, the fact Dr. Arnold's opinion was cursory was a specific and legitimate reason to reject Dr. Arnold's opinion.

Next, the ALJ also rejected Dr. Arnold's opinion was because, like Dr. Rosekrans and Dr. Koenig's opinions, it was not consistent with contemporaneous treatment records of Dr. Brown. Tr. 30. It is well established that the ALJ is

responsible for resolving conflicts in the medical evidence.  *Magallanes*, 881 F.2d at 750.  In March 2015, just six months prior to Dr. Arnold's September 2015 evaluation, Dr. Brown noted Plaintiff was "alert and cooperative," and had a "normal mood and affect without evidence of depression and anxiety," "normal attention span," and "good eye contact" with open conversation.  Tr. 547.  At her visit with Dr. Brown in November 2015, Plaintiff had no psychiatric complaints, Tr. 548, and in January 2016, Dr. Brown indicated Plaintiff's symptoms of depression were "well controlled with medication."  Tr. 557.  Plaintiff does not specifically challenge this reason as a basis for rejection of Dr. Arnold's opinion.  ECF No. 18 at 13.

The ALJ identified legitimate and specific reasons supported by substantial evidence for according little weight to Dr. Arnold's opinion.

*4. William Brown, M.D. (Aug. 2016)*

The record also contains a letter dated August 29, 2016 from Plaintiff's treating physician, Dr. Brown, who began treating her in December 2013.  Tr. 585.  Dr. Brown indicates that he has treated Plaintiff for "severe" depression, anxiety, and arthralgias.  *Id*.  He further states:

> Plaintiff states that the above conditions prevent her from pursuing her career as a cosmetologist for which she has been trained.  She develops severe fatigue after cutting the hair of 3-4 clients and is not able to put in a full day's work because of the above symptoms.

*Id.*

The ALJ gave little weight to Dr. Brown's "opinion," while acknowledging that Dr. Brown is a treating source. Tr. 31. However, the deference ordinarily owed a treating physician does not apply where, as found by the ALJ, Dr. Brown's letter is not a medical opinion, but a recitation of Plaintiff's subjective complaints. Tr. 31. Moreover, the opinion that Plaintiff is unable to work as a cosmetologist is not entitled to special significance, as it is a statement on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527 (d) (3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."); 20 C.F.R. § 416.927(d).

Assuming the ALJ was required to consider and weight the statement, an ALJ may reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly discounted. *Tonapetyan*, 242 F.3d at 1149. The ALJ found that Dr. Brown's letter did not offer an opinion based upon objective findings from his treatment notes, but reiterated what Plaintiff told him. Tr. 31.

The ALJ further found that Dr. Brown's treatment notes were internally inconsistent even with Dr. Brown's characterization of Plaintiff's depression, anxiety, and arthralgia as "severe." Tr. 31. Dr. Brown's treatment notes reflected Plaintiff's depression was "well controlled" with medication, Tr. 566, and as to

arthralgia, Plaintiff suffered from a rash and "intermittent swelling of the hands and ankles," which was improved with massage and application of warm water. Tr. 561. The Court concludes the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence. Accordingly, the ALJ also set forth specific and legitimate reasons for assigning little weight to Dr. Brown's letter based upon Dr. Brown's reliance upon Plaintiff's unreliable self-report and its inconsistency with his own treatment records.

*5. Reviewing Sources*

Finally, Plaintiff contends the ALJ erred by rejecting all of the treating and examining physicians in the file, while relying upon the opinions of non-treating, non-examining physicians Drs. Eather, Covell, and Griffin. ECF No. 18 at 14. Plaintiff contends these opinions cannot by themselves justify the rejection of the opinion of a treating physician. ECF No. 18 at 15 (citing *Lester*, 81 F.3d at 831). The opinion of a non-examining expert "may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149. Because the ALJ properly discounted the opinion evidence of Drs. Rosekrans, Koenig, Arnold and Brown, the ALJ did not error in relying on the opinion evidence from the reviewing consultants and testifying medical expert in assessing Plaintiff's RFC. The ALJ further found that this evidence was consistent

with the treatment record, including the treatment notes of Dr. Brown.  In combination, these findings amount to substantial evidence.

**C. Lay Evidence**

Plaintiff challenges the ALJ's treatment of statements provided by Jane Lederer, Plaintiff's mother.  ECF No. 18 at 15.

An ALJ must consider the statements of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1053.  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  If lay witness statements are rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

The ALJ summarized Ms. Lederer's July 2014 Third Party Function Report, Tr. 295-302, and August 2016 letter, Tr. 338.  Tr. 31.  Ms. Lederer indicated Plaintiff's impairments affect her numerous ways both mentally and physically. Tr. 300.  For example, Ms. Lederer indicated Plaintiff has trouble concentrating and needs encouragement to perform activities of daily living, Tr. 338; Plaintiff

hates change and misses school because of depression or anxiety, Tr. 299; Plaintiff constantly talks and has trouble sleeping, Tr. 338; her anxiety and depression "seem to rule her simple life," Tr. 338; and her anxiety "kicks in" if she is around more than one or two good friends or family, Tr. 338.

The ALJ accorded Ms. Lederer's statements "little weight," for the same reasons he discounted Plaintiff's symptom claims including the inconsistency with the treatment record and lack of support in the medical record. Tr. 32. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony). Thus, the ALJ's well-supported reasons for rejecting Plaintiff's subjective symptoms claims apply as well to Ms. Lederer's statements. The Court concludes the ALJ gave germane reasons for rejecting the lay witness statements. Moreover, Plaintiff does not articulate any additional limitations identified by Ms. Lederer that the ALJ should have adopted, ECF No. 18 at 15, accordingly any error in consideration of Ms. Lederer's statements was harmless. *Stout*, 454 F.3d at 1055

(error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's

ultimate disability conclusion).

**D. Step Five**

Finally, Plaintiff's contends the ALJ erred at step five, because the ALJ

relied upon a RFC and hypothetical that failed to include all of Plaintiff's

limitations, including consistent absenteeism more than one day a month.  ECF No.

18 at 18.

However, the ALJ's RFC need only include those limitations found credible

and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217 ("The

hypothetical that the ALJ posed to the VE contained all of the limitations that the

ALJ found credible and supported by substantial evidence in the record.").  The

hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the

hypothetical that is predicated on the ALJ's final RFC assessment, must account

for all of the limitations and restrictions of the particular claimant.  *Bray*, 554 F.3d

1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the

claimant's limitations, then the expert's testimony has no evidentiary value to

support a finding that the claimant can perform jobs in the national economy."  *Id*.

However, the ALJ "is free to accept or reject restrictions in a hypothetical question

that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968,

973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is

flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs–Danielson*, 539 F.3d at 1175–76.

Plaintiff contends the opinions of Dr. Koenig and Dr. Griffin, as well as Plaintiff's school records, demonstrate Plaintiff would have "attendance issues if required to work," a limitation which the RFC did not accommodate. ECF No. 18 at 18. Plaintiff contends her expected absences in excess of once per month make her unable to sustain employment according to the vocational expert testimony. *Id.* Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's adverse finding in regards to Plaintiff's subjective symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC and posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's RFC determination, to which the expert responded that jobs within the national economy exist that Plaintiff could perform. The ALJ properly relied upon this testimony to support

the step five determination. Therefore, the ALJ's step five determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error. **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22,** is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE THE FILE.**

DATED September 26, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE